UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TYLER PEEL, *et al.*, | § | |
|    *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 4:23-CV-02417 |
| | § | |
| CPAPERLESS, LLC d/b/a | § | |
| SAFESEND, *et al.*, | § | |
|    *Defendants*. | § | |

## **MEMORANDUM AND ORDER**

Currently pending before the Court is Plaintiffs' motion for leave to amend. ECF No. 30. Defendants have also filed a motion to dismiss, ECF No. 24, and a motion for sanctions, ECF No. 26.[1] The primary question before the Court is whether Plaintiffs should be permitted to amend the live pleading, or whether any amendment would be futile. Having reviewed the pleadings, the briefing,[2] and the applicable law, the Court concludes that leave to amend should be granted. However, Plaintiffs' proposed second amended complaint attached to the motion does not adequately address the issues Defendants raise. Accordingly, Plaintiffs' motion for leave to amend, ECF No. 30, is granted in part and denied in part, and Defendants' motions,

---

[1] The district judge to whom this case is assigned referred these motions to this Court pursuant to 28 U.S.C. § 636(b)(1). Order, ECF No. 40. A motion for leave to amend is non-dispositive and appropriate for resolution through issuance of an order. *See* 28 U.S.C. § 636(b)(1)(A).

[2] Defendants filed a response, ECF No. 33, and Plaintiffs filed a reply, ECF No. 41.

1

ECF Nos. 24, 26, will be denied as moot without prejudice to reraising if Plaintiffs' amended complaint fails to cure all alleged deficiencies.

## Background

Plaintiff Tyler Peel is a software developer and a member of Acct1st Technology Group, LLC ("Acct1st"), a web-based accounting technology firm. Am. Compl., ECF No. 16 ¶ 1. Defendants include the other members of Acct1st—Jeromy Gensch, Andrew Hatfield, Tess DeGraffenreid, and the Estate of James Beach—and a competitor in the accounting software market, cPaperless, LLC d/b/a SafeSend ("cPaperless"). *Id.* ¶¶ 2, 20, 40. Acct1st filed for Chapter 11 bankruptcy in 2009. *Id.* ¶ 34. Allegedly, at some unspecified point, Defendants stole the source code for several popular Acct1st programs, such as "Tic, Tie & Calculate," "CPA Safe Sign," and "CPA SafeMail," and used them to create cPaperless without Peel's knowledge. *Id.* ¶¶ 30-40. Peel apparently first learned of this conduct in September of 2021. *Id.* ¶ 37. Peel, in his individual capacity and derivatively on behalf of Acct1st, asserts violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). *Id.* ¶¶ 51-81. Plaintiffs also raise claims for fraud, theft of trade secrets, and other various causes of action under Texas law.[3] *Id.* ¶¶ 82-134.

---

[3] Plaintiffs assert fraud-based claims for RICO violations, fraudulent misrepresentation, fraudulent nondisclosure, and negligent misrepresentation against all Defendants. ECF No. 16 ¶¶ 51-102. Plaintiffs additionally assert non-fraud claims of tortious interference with contracts and prospective business relationships, violations of the Texas Uniform Trade Secrets Act and Texas Theft Liability Act, civil conspiracy, and unjust enrichment against all Defendants. *Id.* ¶¶ 103-34.

In their motion to dismiss, Defendants argue that the alleged conduct, even if true, all occurred years ago and is therefore barred by the various two-to-four-year statutes of limitations. ECF No. 25 at 1-10. cPaperless was formed in 2008, and because Plaintiffs do not allege any specific dates, Defendants surmise that any claims must have accrued then or shortly thereafter.[4] *Id.* at 5. Defendants also contend the complaint fails to satisfy federal pleading standards. *Id.* at 10-32. Defendants further seek dismissal of the derivative action and the claims against the Estate of James Beach as non-viable under Texas law. *Id.* at 32-35. Attached to the motions are several exhibits, including the public trademark applications and bankruptcy disclosure statements. ECF Nos. 25-2, 25-3, 25-4.[5]

In response, Plaintiffs apparently concede that their claims would be barred by the applicable limitations periods, but for tolling doctrines such as the discovery rule and fraudulent concealment.[6] ECF No. 35 at 3. Plaintiffs contend that the lack

---

[4] Moreover, in a 2009 bankruptcy filing, Acct1st declared that it did not own any of the software it sold. ECF No. 25 at 7. Instead, a trademark search shows that former Acct1st member James Beach applied to register the trademark for Tic, Tie & Calculate in 2007 and later assigned it to cPaperless in 2013. *Id.*; ECF No. 25-3. Trademarks for the other software mentioned in the complaint also belong to cPaperless, not Acct1st. ECF No. 25 at 4. Because a background inquiry would have uncovered that Acct1st never owned any of the software Plaintiffs allege were stolen, Defendants contend that Plaintiffs and counsel violated Rule 11 of the Federal Rules of Civil Procedure and seek sanctions. ECF No. 27 at 1.

[5] Defendants also attach an affidavit by Gensch to the motion for sanctions, ECF No. 27-9, in addition to a variety of other exhibits, some of which are public records subject to judicial notice.

[6] Plaintiffs insist that the trademark documentation specifically references Acct1st, so there is a fact question whether it was sufficient to put Plaintiffs on notice. ECF No. 35 at 19. As for the bankruptcy filings, Plaintiffs argue further discovery will prove that Defendants fraudulently concealed those documents from Peel and actively persuaded him not to investigate. *Id.* at 13-16.

of specificity in the pleading is due to Defendants' "superior possession of the facts." *Id.* at 28. Plaintiffs further assert, for the first time, that Defendants owed fiduciary duties as members of Acct1st and lifelong friends. *Id.* at 9-10. Plaintiffs then attach a 172-page appendix of outside evidence to the response, including declarations and emails on topics never mentioned in the complaint. *See* ECF No. 35-1.

Plaintiffs also filed a motion for leave to amend. ECF No. 30. The proposed second amended complaint only addresses Defendants' arguments on the derivative action and the claims against the Estate of James Beach. *See* Proposed Second Am. Compl., ECF No. 30-1. The proposed amendment does not contain any of the allegations or arguments newly raised in Plaintiffs' response to the motion to dismiss, ECF No. 35, nor does it purport to cure any issues with limitations or pleading standards.

## Analysis

**A.    Leave to Amend Is Granted Under the Lenient Rule 15(a) Standard.**

When leave to amend pleadings is requested before trial, courts must "freely give leave when justice so requires." FED. R. CIV. P. 15(a). The language of Rule 15 "evinces a bias in favor of granting leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quotation omitted). Where leave is timely sought, it may only be denied for a "substantial reason." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (quotation omitted); *cf. S&W*

*Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (explaining that Rule 16(b) "good cause" governs leave to amend after scheduling order deadline has passed). Such reasons include: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies, (4) undue prejudice, and (5) futility. *Smith*, 393 F.3d at 595. However, "[a]bsent any of these factors, the leave sought should be 'freely given.'" *Id.*

Defendants oppose the motion for leave to amend primarily on the basis that the proposed amendment is futile. ECF No. 33 at 6. This is because Plaintiffs' proposed second amended complaint does not meaningfully address Defendants' arguments on the statutes of limitations or the adequacy of pleadings under Rules 8 and 9. *Id.* at 7. Defendants assert that "when a '[p]laintiff has already amended his pleadings once as a matter of course, and his Second Amended Complaint does not cure the deficiencies that have' been raised by the defendant, the Plaintiff has already 'pled his best case' and further amendment should not be permitted." *Id.* at 15 (quoting *Gaumond v. City of Dallas*, No. 3:21-CV-00624-E, 2023 WL 2061170, at *11 (N.D. Tex. Feb. 15, 2023)).

The Court is unconvinced that Plaintiffs have pleaded their "best case." This is evidenced by the arguments Plaintiffs raised in response to the motion to dismiss and the attached 172-page appendix. *See* ECF Nos. 35, 35-1. However, with limited exceptions, the Court may not consider evidence outside the pleadings on a motion

5

to dismiss. *See* FED. R. CIV. P. 12(d); *Gray v. GC Services*, No. 4:22-CV-02753, 2023 WL 175192, at *2 (S.D. Tex. Jan. 12, 2023), *aff'd*, No. 23-20056, 2023 WL 6969364 (5th Cir. Oct. 20, 2023) (noting courts may consider documents attached to or referenced in the complaint, and public records subject to judicial notice). Plaintiffs also may not amend their complaint by response. *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 838 (S.D. Tex. 2011) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quotation omitted)). Before the Court may consider those arguments, Plaintiffs must amend the complaint to adequately plead the factual bases for those arguments.

Because the Court has yet to enter a scheduling order, *see* Stipulations, ECF Nos. 11, 18, 34, Plaintiffs need not show "good cause" for leave to amend under Rule 16(b). *See S&W Enters.*, 315 F.3d at 535. Further, unlike the circumstances in *Gaumond*, 2023 WL 2061170, at *11 (striking plaintiff's second amended complaint for failure to seek leave to amend), Plaintiffs here sought leave to amend, as opposed to directly filing a second amended complaint on the docket without leave. Although Plaintiffs concede that the proposed second amended complaint, ECF No. 35-1, does not purport to cure *all* deficiencies raised in Defendants' motion to dismiss, *see* ECF No. 41 at 2, that does not necessarily equate to "futility." Instead, this means that Plaintiffs should be afforded one *final* chance to replead. *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("A court should

not dismiss a plaintiff's complaint under Rule 9(b) unless the plaintiff has already been given the opportunity to amend.").

**B.     The Proposed Amendment Fails to Address Defendants' Arguments in the Motion to Dismiss Pertaining to Federal Pleading Standards.**

Defendants argue that Plaintiffs' first and proposed second amended complaints fail to satisfy federal pleading standards. Under Rule 8(a) notice pleading standards, a complaint "does not need detailed factual allegations," but must provide factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must therefore "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). However, a complaint that includes only "labels and conclusions, and a formulaic recitation of the elements of a cause of action," fails to satisfy this pleading burden. *Twombly*, 550 U.S. at 555 (citation omitted).

Further, when alleging fraud or mistake, Rule 9(b) requires the plaintiff "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). This heightened pleading standard serves as a "gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 204 (5th Cir. 2013)

(quotation omitted). Courts must "apply Rule 9(b) to fraud complaints with 'bite' and 'without apology.'" *Grubbs*, 565 F.3d at 185 (quotation omitted). While Rule 9(b) is relaxed for pleading "state of mind" and where facts "are particularly within the perpetrator's knowledge," that narrow exception is not a "license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (quotation omitted).

As Defendants correctly assert, the heightened pleading standards of Rule 9(b) apply to Plaintiffs' fraud claims. ECF No. 25 at 11-22; *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (noting Rule 9(b) applies to negligent misrepresentation when based on same alleged facts as fraud claims). This includes Plaintiffs' RICO claims, to the extent they are premised on allegations of mail and wire fraud. *See Arruda v. Curves Int'l, Inc.*, 861 Fed. App'x 831, 834 (5th Cir. 2021) (applying Rule 9(b) to RICO predicate acts of mail and wire fraud). Additionally, "Rule 9(b) applies in fraudulent concealment cases." *Stringer v. Remington Arms Co., L.L.C.*, 52 F.4th 660, 662 (5th Cir. 2022). Plaintiffs do not dispute that Rule 9(b) applies to their RICO and other fraud-based claims. *See* ECF No. 35 at 19-30.

Based on the pleadings as they currently exist, as Defendants assert in their motion to dismiss, Plaintiffs fail to plead fraud with particularity. Absent from the

8

complaint are any dates pertaining to the alleged fraud, or even any of the alleged acts of theft. Instead, Plaintiffs vaguely assert that at some point prior to 2021, "Defendants effectively stole the software from Acct1st and incorporated it into their business, cPaperless." ECF No. 16 ¶ 66. There are no allegations of any specific representations, other than those regarding Peel's ownership interest in Acct1st and other entities. *Id.* ¶¶ 19-25. But Plaintiffs do not explain how those representations are *fraudulent* or even *relevant* to the harms asserted. Many of the factual allegations are broadly attributed to all Defendants "upon information and belief," *id.* ¶¶ 30, 33, 66, 72, without explaining the factual bases for those beliefs. Although Plaintiffs devote eleven pages to pleading RICO violations, no predicate acts are identified in the complaint.[7] Plaintiffs' response relies on predicate acts of wire and mail fraud, ECF No. 35 at 20-23, but no such allegations are pleaded with particularity. Indeed, Plaintiffs fail to plead with particularity *any* RICO predicate act.[8]

---

[7] Importantly, Plaintiffs' RICO claim is the sole basis for federal court jurisdiction, ECF No. 16 ¶ 10, so failure to plead with particularity a viable RICO violation against at least one Defendant would require dismissal of *all* remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating the district court has discretion to "decline to exercise supplemental jurisdiction" where it "has dismissed all claims over which it has original jurisdiction"); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 590 (5th Cir. 1992) (holding that district court "abused its discretion in retaining jurisdiction over the state law claims after it had dismissed the federal RICO claims").

[8] Two or more violations of certain criminal statutes, otherwise known as "predicate acts," as well as "a threat of continuing racketeering activity," must be alleged to state a RICO claim. *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007). Plaintiff alleges that Defendants crossed state lines multiple times, including for a "company retreat" in 2015. ECF No. 16 ¶ 38. But merely crossing state lines is not a predicate act. *See* 18 U.S.C. § 1952. Nor do Plaintiffs explain how Defendants' "desperate attempt to prove that they own the Acct1st source code," ECF No. 16 ¶ 38, did not put Plaintiffs on inquiry notice.

Indeed, the pleadings fail to explain what harmful conduct took place. As far as the Court can surmise, Peel complains of little more than commonplace commercial activity. Defendants started a business, which went bankrupt, so Defendants started a new business.[9] Conclusory statements that Plaintiffs were "defrauded by Defendants," ECF No. 16 ¶ 39, *inter alia*, are not entitled to the assumption of truth, *see Iqbal*, 556 U.S. at 678-79. Even under the more lenient Rule 8(a) notice pleading standards, Plaintiffs must at least plead sufficient factual allegations—as opposed to legal conclusions—to provide fair notice to *each* Defendant. *See Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) ("Plaintiffs should endeavor to explain what role each Defendant played . . . , rather than grouping them together at all times.").[10]

---

[9] Peel was not the sole member of and never wholly owned Acct1st. ECF No. 16 ¶ 22 (less than 15%). When Peel complains of all other Acct1st members conspiring against him, this reflects how LLCs function—by majority vote. *See* ECF No. 15 n.10; TEX. BUS. ORGS. CODE § 101.355. Allegations that Peel *believed* he owned a larger interest in Acct1st and other entities, ECF No. 16 ¶ 56, are irrelevant and unsupported by any allegations that Peel managed Acct1st. *See* TEX. BUS. ORGS. CODE §§ 101.251 (governing authority), 101.354 (equal voting rights).

[10] This is particularly the case where not all Defendants stand on equal footing. For example, Plaintiffs allege they did not discover the existence of cPaperless until 2021, ECF No. 16 ¶ 37, and yet Plaintiffs "reasonably believed that Defendants were reliable and trustworthy partners," *id.* ¶ 28. Additionally, Plaintiffs allege "upon information and belief" that "Hatfield and Gensch" "took" Acct1st software to "start their own company in secret," *id.* ¶ 33, and yet all individual Defendants "eventually formed cPaperless," *id.* ¶ 35, and Plaintiffs broadly assert theft of trade secrets against all Defendants, *id.* ¶¶ 117-26. This type of group pleading permeates the amended complaint. As a result, Defendants argue that Plaintiffs attempt to assert nonviable RICO claims against the RICO enterprise itself, *see* ECF No. 25 at 13 n.9, derivative claims against cPaperless without a pre-suit demand, *id.* at 34 & n.14, and fiduciary duties owed by cPaperless to complete strangers, *id.* at 21-22. Plaintiffs fail to rebut or cure these deficiencies.

Furthermore, Plaintiffs apparently concede that all claims are barred under the applicable two-to-four-year statutes of limitation but for various tolling principles.[11] Although Plaintiffs allege that all "wrongful acts complained of . . . were unlawfully concealed from Peel," ECF No. 16 ¶ 45, there are no factual allegations supporting such a conclusion.[12] Fraudulent concealment must be pleaded with particularity, *Stringer*, 52 F.4th at 662, and Plaintiffs' silence is fatal to their RICO claim.[13] As for the discovery rule,[14] Plaintiffs' argument that the relevant facts are solely within

---

[11] While Plaintiffs cite Texas law for the discovery rule and fraudulent concealment in response to the motion to dismiss, ECF No. 35 at 6-8, Plaintiffs must rely on federal law for the RICO claim. The Fifth Circuit applies the "injury discovery" and "separate accrual" rules to RICO claims. *Lewis v. Danos*, 83 F.4th 948, 955 (5th Cir. 2023). Concepts of "equitable tolling" and "fraudulent concealment" are also available in the RICO context, but only where "such concealment prevented discovery of the injury." *Id.* Regardless, "a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'" *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997).

[12] The proposed second amended complaint contains additional allegations, stating that Gensch made "continual efforts to fraudulent [*sic*] conceal the truth behind Defendants' wrongdoing," ECF No. 30-1 ¶ 38, and that Peel "could not have discovered the facts, especially in light of Defendants' continued efforts to conceal the facts," *id.* ¶ 94. Aside from these two conclusory statements, however, there are no supporting factual allegations pleaded with particularity. Instead, Plaintiffs attempt to allege *new* facts through the attached declaration. *See* ECF No. 35-1 at 4-13.

[13] The statute of limitations for RICO is four years. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). Under federal law, "a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury." *Lewis*, 83 F.4th at 955. "Knowledge of the wrongdoer is not required to start the clock on the statute of limitations; knowledge of the injury alone suffices for the claim to accrue." *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 254 (5th Cir. 2021). Publicly available documents subject to judicial notice may establish inquiry notice of an injury. *See id.* at 255 (considering SEC filings); *Glatzer v. Skilling*, No. 4:16-CV-1449, 2017 WL 1487675, at *2 (S.D. Tex. Feb. 23, 2017) (concluding RICO claim accrued when the alleged act causing plaintiff's injury was made in a "public announcement"); *Abecassis v. Wyatt*, 902 F. Supp. 2d 881, 900 (S.D. Tex. 2012) ("The party invoking fraudulent concealment is generally considered to have constructive knowledge of publicly available information."). In the RICO context, both defenses require a showing of reasonable diligence. *Klehr*, 521 U.S. at 194.

[14] Even under Texas law, fraudulent concealment and the discovery rule will "not apply to claims that could have been discovered through the exercise of reasonable diligence." *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008); *cf. Petrobras*, 9 F.4th at 253 (noting Texas discovery rule's

Defendants' knowledge is a nonstarter where the harm complained of, *i.e.*, that "Defendants added [Acct1st] products to their cPaperless.com website and removed them from the Acct1st.com website,"[15] ECF No. 16 ¶ 39, ostensibly took place in broad daylight.[16] Indeed, many of the exhibits to the briefing are public records.[17]

---

similarities to RICO rule). Knowledge is generally imputed for matters of "public record," *i.e.*, "readily accessible and publicly available information." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011); *Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("Under Texas law, a matter may become public knowledge irrespective of whether it is disseminated to a broad or narrow audience."). Such matters include information on public websites. *See Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1011 (S.D. Tex. 2018) ("Generally, any defamation claim arising out of a website would accrue from the day the matter was published or circulated." (quotation omitted)). Indeed, under Texas's categorical approach to the discovery rule, "misappropriation of trade secrets is not a cause of action that is inherently undiscoverable." *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 457 (Tex. 1996).

[15] Plaintiffs do not argue and offer no evidence that the Acct1st website advertised any software or was even functional beyond the end of 2018. *See* ECF No. 35 at 16. Without some extraordinary basis for fraudulent concealment, at the very latest, Plaintiffs must have been aware that all products had been "removed" from the Acct1st website when it was shut down, apparently in early 2019. *See* ECF No. 16 ¶ 39. Even under the longest four-year statute of limitations, all claims would appear to have expired before Plaintiffs filed suit on June 30, 2023. ECF No. 1.

[16] Plaintiffs attempt to circumvent this by arguing that certain Defendants owed fiduciary duties, and "the nature of the injury is presumed to be inherently undiscoverable" in the fiduciary context. ECF No. 35 at 6 (quoting *Comput. Assocs.*, 918 S.W.2d at 456). However, aside from cursorily mentioning "fiduciary duties to Acct1st," ECF No. 16 ¶¶ 47, 132, Plaintiffs assert no cause of action for breach of fiduciary duty, and there are no factual allegations to support any such duties owed to Peel. More importantly, there appears to be no scenario under which cPaperless owed Plaintiffs any such duty. Once any claims against cPaperless accrued, Plaintiffs arguably were on inquiry notice as to claims against the other Defendants. *Cf. Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1988) (holding that even in the context of legal malpractice actions, claimants are not excused from exercising "reasonable care and diligence" to discover facts of claim).

[17] This includes the full version of the public trademark filings for Tic, Tie & Calculate attached as an exhibit to Plaintiffs' response. ECF No. 35-1 at 81-172. The 2007 application described Tic, Tie & Calculate as "Acct 1st software" and attached the first page of the quick start guide for reference, which prominently displays an "Acct1st.com" logo. ECF No. 35-1 at 149-50. Plaintiffs thus dispute whether the trademark filing was sufficient to place them on notice as to any claims of ownership. ECF No. 35 at 18-19. However, that same documentation shows that Beach assigned the trademark to cPaperless in 2013, and attached to the filing is a screenshot of cPaperless's public website, showing TicTie Calculate as a cPaperless product, alongside SafeSign and SafeSend. ECF

Thus, unless Plaintiffs plead with particularity the circumstances of any fraudulent concealment as to each defendant, Plaintiffs' claims are time-barred.[18]

C. **Plaintiffs Are Ordered to Replead in Compliance with Rule 9(b) to Allege Fraud with Particularity.**

Because Defendants raise meritorious arguments under Rule 9(b), Plaintiffs must amend the live complaint to sufficiently allege the who, what, when, where, and how of all fraud-based claims, including any RICO predicate acts. Furthermore, the limitations periods for Plaintiffs' claims are now squarely at issue in this case. Therefore, the Court hereby ORDERS Plaintiffs to amend the live pleading to specifically include the following information:

1. A clear timeline of all relevant events, including when cPaperless began advertising Tic, Tie & Calculate and other allegedly stolen software on its public website, when the Acct1st website stopped advertising that same software, and all other facts contained in public records and subject to judicial notice, such as the bankruptcy and trademark filings.

2. Factual allegations explaining with particularity how *each* Defendant's actions harmed Plaintiffs and how *each* Defendant fraudulently concealed those facts.

---

No. 35-1 at 125-34. In 2018, when Beach updated and amended the trademark to "TICTIE CALCULATE," the owner's name is listed as "CPAPERLESS, LLC." *Id.* at 111. Attached to the application is another specimen, consisting of a "screenshot from website at point of sale." *Id.* at 113. Those screenshots show "TicTie Calculate" publicly advertised as a product for sale on cPaperless's SafeSend website as of April 24, 2018. *Id.* at 117-19. Even if Plaintiffs' ignorance of trademark filings was excused, the cPaperless website evidence was publicly available.

[18] Just because the threshold showing for Plaintiffs to establish fraudulent concealment under these circumstances is a high bar does not mean it is impossible. Plaintiffs may attempt to plead facts supporting fraudulent concealment, but Plaintiffs are forewarned that a single phone conversation with a single Defendant about the bankruptcy proceedings in 2009 cannot toll all claims against all parties indefinitely. ECF No. 35-1 at 7-8.

3. Factual allegations supporting fraudulent concealment for every year that cPaperless publicly advertised that it owned Tic, Tie & Calculate.

4. An explanation of how Plaintiffs acted with reasonable diligence from the 2009 Acct1st bankruptcy through 2021.

5. Facts showing that Acct1st's claims survived bankruptcy or accrued after discharge.

6. Identify each alleged act of racketeering activity for Plaintiffs' RICO claim. Include the statute or law that is alleged to have been violated, and the facts surrounding each violation.

7. Describe how the alleged acts of racketeering activity form a pattern of racketeering activity.

8. Describe how the alleged acts of racketeering activity are related to one another.

9. To the extent Plaintiffs intend to rely on predicate acts of wire or mail fraud, state with particularity the circumstances of the fraud, including the time, place, participants, and content of those predicate acts.

10. An explanation of how the alleged acts of racketeering activity pose any threat of continued criminal activity.

11. Explain whether the pattern of racketeering activity and the alleged RICO enterprise are separate or have merged into one entity.

12. Provide detail as to how each Defendant allegedly violated each subsection of the RICO statute.

13. Identify misrepresentations made to Plaintiffs, including how those statements were fraudulent, how Plaintiffs reasonably relied on those statements, and the time, place, participants, and content of the misrepresentations.

14. Factual allegations supporting causes of action against *each* Defendant.

15. Any other amendments necessary to cure the deficiencies identified in Defendants' motion to dismiss.

*Strnad v. Behrend*, No. SA-07-CV-680-XR, 2008 WL 11333923, at *4 (W.D. Tex. Feb. 27, 2008) (listing information that plaintiff must include in his revised RICO cause of action).

Plaintiffs are additionally reminded that Rule 11 of the Federal Rules of Civil Procedure requires all representations to the Court be certified as "nonfrivolous," with adequate "evidentiary support," and based on "an inquiry reasonable under the circumstances." FED. R. CIV. P. 11(b). The reasonableness of such investigation is evaluated "at the time counsel signed the document." *Worrell v. Houston CanA Acad.*, 287 Fed. App'x 320, 325 (5th Cir. 2008) (cleaned up). In other words, Plaintiffs cannot simply repurpose the existing complaint with a few minor adjustments and comply with their Rule 11 obligations. Any facts that have come to light since the filing of the original complaint cannot be ignored. This includes information in the public documents on which Plaintiffs base their arguments, including the website archives. *See id.* at 325-26 (affirming sanctions where counsel failed to perform a basic search on the defendant's public website). Failure to comply with the instructions in this Order may result in dismissal or other appropriate sanctions. *See* FED. R. CIV. P. 11(c), 41(b).

## Conclusion

For the reasons stated above, Plaintiffs' motion for leave to amend, ECF No. 30, is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' proposed

15

second amended complaint, ECF No. 30-1, does not cure all deficiencies raised in Defendants' motion to dismiss. ECF No. 25. Therefore, Plaintiffs shall file an amended complaint in compliance with the Court's instructions no later than April 15, 2024. Defendants' motion to dismiss, ECF No. 24, and motion for sanctions, ECF No. 26, are **DENIED as MOOT** without prejudice to refiling.

**IT IS SO ORDERED.**

Signed on March 14, 2024, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**